## NEWELL, et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4870.

Circuit Court of Appeals, Seventh Circuit.

July 7, 1933.

W. E. Clark, of Bedford, Ind., and Sterling Newell, of Cleveland, Ohio (Squire, Sanders & Dempsey, of Cleveland, Ohio, and Clark & Brooks, of Bedford, Ind., of counsel), for petitioners.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and John MacC. Hudson, Sp. Assts. to Atty. Gen., for respondent.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

The instant appeal involves the correctness of the assessment of a $20,259.52 deficiency in the estate tax of Charles C. Ingalls, deceased. Petitioners' attack is directed to a single issue, one of fact, to-wit, the value of decedent's 3,281 shares of common stock of the Ingalls Stone Company.

The facts: Decedent died October 24, 1928, owning 2,258 shares of the preferred stock and 3,281 shares of the common stock of the Ingalls Stone Company. The balance of that company's stock, constituting only a minority interest, was owned by relatives and employees of the corporation. The Ingalls Stone Company was a close corporation under the complete domination and control of decedent. For some years prior to his death, its business had been conducted most successfully.

For the purpose of ascertaining the Indiana inheritance tax, the preferred stock was appraised at $75 per share and the common stock at $154.10 per share. The Commissioner determined the value of the preferred stock to be $100 per share and the common stock to be $250 per share. The Board of Tax Appeals found:

"The fair market value of the decedent's stock at the date of his death was $75 per share for the preferred and $242.44 per share for the common."

Petitioners accept the finding of $75 per share for the preferred stock. They dispute only the correctness of the finding of $242.44 per share for the common stock.

The findings and opinion of the Board show clearly that it reached its conclusion as to the fair market value of the common stock by first ascertaining its book value and then, basing its conclusion on the company's earning capacity, found that the book value was also the fair market value of said stock.

Petitioners challenge the correctness of this finding because (a) the book value of the stock was not $242.44; (b) the earnings were not 35.54%, exclusive of dividends upon preferred stock; and (c) the inclusion of $300,000 in the company's assets, which was the amount received by the company on life insurance policies covering decedent's life, should have been reduced by the amount of the loss which the company sustained due to the death of its founder and guiding spirit.

■ *Book Value of the Stock.* Assuming that the Board was endeavoring to ascertain the book value of the common stock, it erred when it placed the value of the outstanding preferred stock at only $75 per share. While the market value of this preferred stock was but $75, its value for the purpose of determining the book value of the common stock was par, or $100 per share. To ascertain the book value of the common stock, the Board therefore should have deducted from the company's assets, $268,400 instead of $201,300, as the book value of the outstanding preferred stock.

*Earning Capacity.* Nor is this the only error in the Board's computations. In the last paragraph of the Board's opinion, we find the following:

"The average earnings per common share during such period after the allowance of dividends upon the average number of preferred shares outstanding during the period equal $35.54 per share for the common stock and it is furthermore to be noted that the company had valuable contracts on its books at the date of the death of the decedent and the testimony shows that the profits for the year 1929 were in excess of those for 1928."

The evidence conclusively showed the earnings for each of the six years prior to the death of decedent. Instead of earning 35.54% exclusive of dividends paid upon the preferred stock, it earned about that percentage inclusive of dividends earned on preferred stock.

■ The Board very properly looked to the earning capacity of the corporation to ascertain the market value of its common stock, for book value and earning capacity are both important factors in determining market value. It said:

"The Board is of the opinion that the earnings for the company for the six-year period ending in 1928 warrants such a valuation [in its book value]."

■ We can not assume that the Board would have placed the same valuation on the common stock if the corporate earnings were approximately $6 a share less than the Board erroneously assumed them to be.

■ Petitioners also complain of the inclusion of $300,000 which represented proceeds of insurance policies which were collected by the company on Ingalls' death. While not challenging the propriety of including the proceeds of insurance policies made payable to the company as an asset of the corporation for the purpose of determining the market value of the common stock of which the decedent died seized, they argue that the Board should have deducted from this sum a substantial part thereof because of the death of

Ingalls and the loss to the company that resulted therefrom. This contention seems eminently sound and fair. There should be a finding which will cover this loss, if any, to the company, for without a proper deduction therefor neither book value nor market value can be ascertained.

We have examined the record in an effort to dispose finally of the appeal by fixing the fair market value of the common stock. If the issue were limited to an ascertainment of the book value of common stock only, final disposition of the case might be made here. The evidence, however, is not sufficiently complete to warrant an attempt on our part to ascertain the amount of the company's loss through the death of the deceased, nor to say with finality and a reassuring degree of accuracy, what effect the modification in the earning capacity of the corporation would have upon the fair market value of the common stock.

We conclude it would be fairer to both parties and in the interest of justice to reverse the order of the Board [Eau Claire Book Co. v. Commissioner (C. C. A.) 65 F.(2d) 125, decided May 25, 1933] and remand the case with directions to take further evidence and make further findings on the controverted issues.

The order of the Board of Tax Appeals is reversed with directions to proceed in accordance with the views here expressed.