**WEBER v. RASQUIN, Collector of Internal Revenue.**

**No. 6932.**

District Court, E. D. New York.

May 27, 1938.

Cullen & Dykman, of Brooklyn, N. Y. (Francis L. Durk, Jules Haberman, and Charles J. Dodd, Jr., all of Brooklyn, N. Y., of counsel), for plaintiff.

Harold St. L. O'Dougherty, U. S. Atty., of Brooklyn, N. Y. (James W. Morris, Asst. Atty. Gen., Andrew D. Sharpe and Frederic G. Rita, Sp. Assts. to Atty. Gen., and Frank J. Parker, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for defendant.

ABRUZZO, District Judge.

This action was brought to recover the sum of $15,558.39 with interest from August 26, 1935, paid as and for an inheritance tax upon the estate of John W. Weber, deceased, who died May 26, 1933.

The decedent, when he died, left 1,497 shares of the capital stock of William Ulmer, Incorporated, a New York corporation. The Commissioner of Internal Revenue found that these shares of stock had a fair market value of $183.17 per share. The estate, on the contrary, reported that these shares of stock had a fair value of $100 per share on the date of the decedent's death. The amount sued for represents the tax on the increased value of $83.17 per share.

### Facts.

William Ulmer, Incorporated, was originally incorporated as William Ulmer Brewery, and as such was engaged in the manufacture and sale of malt beverages. With the advent of national prohibition, the corporation ceased to manufacture malt beverages but continued in business for the purpose of managing and liquidating assets consisting in the main of real property and mortgages upon real property. which had been acquired in connection with its malt beverage business.

The corporation name was changed from William Ulmer Brewery to William Ulmer, Incorporated, in 1930.

When John W. Weber died on May 26, 1933, there were existing 5,500 shares of capital stock which were owned as follows:

| | |
|---|---|
| John W. Weber | 1497 shares |
| Mrs. Weber | 1253 shares |
| Mrs. Becker | 1554 shares |
| Mrs. Fallert | 299 shares |
| Margaret W. Becker | 299 shares |
| Frederick W. Becker | 299 shares |
| William U. Becker | 299 shares |
| | 5500 shares |

Mrs. Weber and Mrs. Becker were sisters, and all of the stockholders were members of either the Weber or Becker families, and were related to one another either by blood or through marriage.

This stock had never been listed, nor had there been any sales of the same.

The owners of the stock were in perfect accord as to the management of the corporation's affairs and the officers and directors were equally divided between the Weber and Becker families. The decedent was president of the corporation at an annual salary of $12,000; the plaintiff vice president at $6,000; Mrs. Becker secretary at $6,000; and her son, William W. Becker, treasurer at $10,500. Thus, it will be seen that the annual salaries, for five years preceding decedent's death, totaled the sum of $34,500 each year.

There is no dispute that this was closely held corporate stock. The determination of the Commissioner with respect to the value of the stock of this corporation was made under Article 13(3), Treasury Regulations 80, promulgated under the Revenue Acts of 1926 and 1932 as amended, which reads as follows:

"Art. 13. *Valuations.*— * * *

"(3) *Stocks and bonds.*— * * *

"In the case of the stock of a close corporation, the value shall be determined on the basis of the company's net worth, earning power, and dividend-paying capacity, and all other relevant factors bearing upon the value of the stock. Complete financial and other data upon which the estate bases

662

its valuation should be submitted in duplicate with the return. In the case of the stock of other corporations where the shares are not quoted on a bona fide bid and asked basis and no bona fide sales thereof have been made within a reasonable time of the decedent's death, the value should be determined and supported in the manner indicated in this paragraph."

Under this regulation, the Commissioner appraised the net worth or asset value of the corporation at $1,007,470.44. He then divided that sum by 5,500 representing the number of shares, reaching the conclusion that on May 26, 1933 the stock had a fair market value of $183.17 per share.

The plaintiff attacks the Commissioner's action as illegal because of his absolute failure to give any consideration as required by the Regulations and by Law, to the following elements bearing upon fair market value, viz.:

(a) Proven lack of earning power of the shares over the five-year period next preceding the decedent's death; (b) the lack of dividend-paying capacity from earnings over the five-year period next preceding the decedent's death; (c) the nonliquidity of substantially nine-tenths of the assets of the corporation, which consisted of real property and mortgages on real property; (d) the heavy expense incidental to any normal liquidation of assets consisting of real property and mortgages on real property; (e) the abnormal economic conditions which existed on the date of decedent's death; (f) the fact that the decedent's shares were a minority holding.

Plaintiff stresses his contention that the Commissioner, in reaching the fair-market value, ignored the factor contained in subdivision marked (a) which was the element of "earning power".

The defendant resists the contention advanced by the plaintiff. His defense may be summarized under two subdivisions:

(1) The value determined by the Commissioner is prima facie correct and the burden of proof is upon the plaintiff to establish the contrary. The defendant claims that the plaintiff offered no evidence to show that the Commissioner failed to consider and to give effect to all relevant factors.

(2) The Commissioner's appraisal of the shares of stock at $183.17 per share was properly reached. This determination was made by giving consideration to all of the

relevant factors necessary to reach that conclusion.

In analysing the respective theories advanced by the parties, there is no substantial dispute as to the fact that the assets of the corporation consisted almost entirely of real estate and mortgages. No sales of its stock were shown.

The Commissioner evidently resorted to the assets of the corporation as the basis of the valuation of the stock. Buckley and Horton appraised the real estate and the mortgages as of the date of death of the deceased on behalf of the corporation.

A careful perusal of the method by which Buckley and Horton arrived at the valuation of the real estate and mortgages indicates that they made allowances for (1) the nonliquidity of these assets; (2) the expense incidental to any normal liquidation of same; and (3) the abnormal economic conditions which existed at the time of the decedent's death. This firm's appraisal and report fixed the net worth of the corporation somewhat in excess of $1,000,000. This appraisal was made apparently for tax purposes. It is safe to assume that the lowest values possible were placed on the real estate and mortgages. To some extent, the plaintiff is now bound by the appraisal.

Income tax returns were filed by the William Ulmer Brewery for five years prior to the decedent's death. These tax returns included dividends paid by this corporation. The dividends amounted to a large sum. In 1928, the dividend was $77,000; in 1929, $55,000; in 1930, $55,000; and in 1931, $55,000. It is admitted that the earnings in 1928 amounted to $28,299.90; in 1929, $21,147.66; and in 1931, $10,313.42.

The plaintiff asserts that the $55,000 paid in 1930 as dividends were all out of the surplus of the corporation. It is claimed that the dividends were paid as the result of a certain condemnation proceeding whereby the City of New York took over property belonging to this corporation. The accountants employed by the plaintiff reported the amount obtained from the condemnation proceeding as a loss, apparently concluding that it was not a profit for that particular year. This determination is not entirely correct. It does not appear when the title to the property was taken by the City. However, it is an undisputed fact that from the date of taking title to the date of the payment of the award the City

paid 6% interest on the award. It, thus, appears that approximately $2,000 should be allocated as part of the earnings for each year from the date of taking title to the date of the payment of the award.

From an analysis of the salaries paid by the corporation, it is evident that the treasurer, who received $10,500 annually, was the only officer who could be deemed a necessary employee of the corporation. It does not appear clearly in the record just what the duties of the decedent were. Nevertheless, he was paid a salary of $12,000 per year. It is undisputed that the salaries of $6,000 per year paid to Mrs. Becker and the plaintiff, respectively, were entirely unnecessary. It is academic, therefore, that the Commissioner is justified in adding $24,000 per year, paid in salaries unnecessarily, as earnings of the corporation.

Under all of these circumstances, the Commissioner's conclusion as to the net worth of this corporation was correct. The plaintiff's contention that all of the relevant factors urged by her, particularly earnings, were not taken into consideration by the Commissioner is untenable.

### Law.

The plaintiff contends that the Commissioner fell into error because he disregarded the Regulations with respect to the earnings of the corporation. Matter of Foster's Estate, 239 App.Div. 806, 264 N.Y.S. 913, is cited in support of the contention that the earnings of the corporation must be taken into consideration in order to properly fix the value of the stock.

The defendant cites the case of Matter of Dupignac's Estate, 123 Misc. 21, 204 N.Y.S. 273, wherein the value of the stock was fixed pursuant to the book value.

In Laird v. Commissioner, 3 Cir., 85 F.2d 598, 600, the Court, in its opinion, stated: "Stock in a close corporation should be valued upon the basis of the company's net worth, earning and dividend-paying capacity, and all other factors having a bearing upon the value of the stock. * * *"

The case of Newell v. Commissioner, 7 Cir., 66 F.2d 102, 103, sets forth the following: "The findings and opinion of the Board show clearly that it reached its conclusion as to the fair market value of the common stock by first ascertaining its book value and then, basing its conclusion on the company's earning capacity, found

that the book value was also the fair market value of said stock."

### Conclusion.

In making his determination, the Commissioner had before him the report of Buckley and Horton. The income tax returns in evidence must have been taken into consideration by him. He was justified in adding salaries unnecessarily paid out as part of the earnings of the corporation. The conclusion reached by him as to the fair market value of this corporation's stock took into account its book value, earnings, dividends and other relevant factors contained in the Regulations. He undoubtedly followed the rule laid down in the Newell case, supra.

The valuation determined by the Commissioner, under all of the circumstances, must be deemed to be prima facie correct. The burden of proving to the contrary is incumbent upon the plaintiff. It cannot be said that this burden has been met. A decree, therefore, should be entered in favor of the defendant.

Settle decree on two days' notice.