GOODMAN v. COMMISSIONER OF INTER-
NAL REVENUE.

No. 64.

Circuit Court of Appeals, Second Circuit.

June 20, 1946.

A. Harding Paul and R. H. Yeatman, Jr., both of Washington, D. C., and Raymond M. White, of New York City, for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, A. F. Prescott, and Melva M. Graney, Sp. Assts. to the Atty. Gen., for respondent.

Before SWAN, CLARK, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

The sole question presented by this petition for review of a decision of the Tax Court of the United States is the value for gift tax purposes of certain policies of insurance taken out by the taxpayer on the life of her husband. For present purposes the facts may be briefly summarized as follows:

On December 19, 1930, the taxpayer created a trust, transferring to the trustee certain securities, and also five ordinary life, annual premium policies on her husband's life which she had previously taken out and in which she was named as the beneficiary. Each of these policies was in the face amount of $100,000. By the terms of the trust the income of the securities which constituted Trust Estate A was to be used by the trustee to pay the net annual premiums on the policies which constituted Trust Estate B, with any excess of income over and above the amount necessary for that purpose payable to the taxpayer. Upon the death of the taxpayer's husband, if she survived, the proceeds of the life insurance policies, which would then comprise Trust Estate B, were to be set apart in specified proportions in trust for the benefit of the taxpayer's three children and sister-in-law, with remainders over. Other provisions with respect to the ultimate devolution of the trust estates are irrelevant and need not be detailed. The taxpayer reserved "the right at any time or from time to time during the lifetime of her husband * * *

without notice to any person other than the Trustee, to revoke the trusts hereby created in whole or in part." Her husband died on March 19, 1939, the taxpayer not having exercised her power of revocation.

The taxpayer now concedes that under the above circumstances her gift of the insurance policies constituting Trust Estate B became complete when her power to revoke the trust terminated at her husband's death, and hence that she became liable in 1939 to pay a gift tax in some amount. She contends, however, that the amount of that tax should be computed on the terminal reserve values of the policies interpolated to the date of her husband's death together with the parts of the last paid premiums apportioned to the end of the premium periods, which it is agreed aggregate $112,-047.02, instead of on the face amounts of the policies, plus post mortem dividends of the stipulated amount of $3,314.15, making a total of $503,314.15, as the Commissioner determined and as the Tax Court decided.

The taxpayer rests her primary argument for the use of the terminal reserve values of the policies in computing her gift tax upon the proposition that had she exercised her power of revocation she could have repossessed herself only of those values, and upon the applicable regulation held valid in Robinette v. Helvering, 318 U.S. 184, 186, 187, 63 S.Ct. 540, 87 L.Ed. 502 (Treasury Regulations 79, Art. 3), which provides in part that the gift tax "is a primary and personal liability of the donor, is an excise upon his act of making the transfer, (and) is measured by the value of the property passing from the donor." She says that irrespective of the value of her gift to the donees, its value to her is to be used in computing her tax, and that the value to her is only what she could have realized herself had she revoked her trust; in other words, that she could give no more than she could herself have obtained had she exercised her power of revocation.

Her argument is fallacious. In the first place it rests upon a supposititious state of facts instead of upon the facts presented. The taxpayer actually did not repossess herself of her interest in the pol-

licies of insurance upon her husband's life by revoking her trust and we see no reason to consider what the tax consequences would be if she had. In the second place, if her argument were adopted the result would be to value the policies at a moment of time antecedent to the time when the gift became complete, whereas the statute and applicable Treasury Regulations impel the conclusion that taxable value for gift tax purposes is the value of the gift to the donor at the moment it is made.

The statute itself, § 506 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Code, § 1005, provides that "If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift," and the Supreme Court in Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748, held that under circumstances like the present a gift becomes complete upon the termination of the power to revoke the trust. Thus the date of the taxpayer's gift was the date of her husband's death, and on that date the policies matured. That is to say, the husband's death had a dual effect; it instantaneously terminated the taxpayer's power to revoke her trust and therefore perfected the gift, and it also matured the policies of insurance upon his life.

To determine their value at that time we turn to the applicable regulations (Article 19 of Treasury Regulations 79 (1936 Ed.)). The only subdivision of this Article dealing with the valuation of life insurance contracts is (9), but this subdivision is clearly irrelevant here because it applies to the valuation for gift tax purposes of contracts "on which further premium payments are to be made." Thus subdivision (6) which provides that "Any property not specifically treated in this article should be valued in accordance with the rule laid down in subdivision (1) hereof," applies, and subdivision (1) after quoting § 506 of the statute, supra, provides: "The value of the property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell * * * All relevant facts and elements of value as of the time of the gift should be considered."

220

It is not easy to conceive of a ready market for matured life insurance policies, but if such a market existed, it is obvious that their price, what they would change hands for between a willing buyer and a willing seller neither acting under compulsion, would be their face value plus post mortem dividends. However, a relevant element bearing upon their value is the fact that such policies are not payable immediately upon death, but are payable only upon proof of death. Thus in some cases there may well be a substantial delay after the death of an insured in the payment of a matured policy, and this naturally would reduce the price for which such a policy would change hands at the time of death. No such delay, however, is indicated in the case at bar. For all that appears proof of death could have been and perhaps was made at once without even the loss of a day's interest. In any event, the burden of proving delay in presenting proofs of death, if there was any, rested upon the taxpayer.

The other arguments advanced by the taxpayer in support of her contention do not warrant explicit refutation.

The decision of the Tax Court is affirmed.