**OLD KENT BANK AND TRUST COMPANY, as Executor of the Estate of Mildred S. Goodwin, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**OLD KENT BANK AND TRUST COMPANY, as Executor of the Estate of Frank T. Goodwin, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. Nos. 5634, 5635.**

United States District Court
W. D. Michigan, S. D.

Nov. 4, 1968.

---

1. Rape—Va.Code Ann. § 18.1–41 et sequi (Repl 1960); Taking indecent liberties with children—Va.Code Ann. § 18.1–215 (Repl.1960).

Warner, Norcross & Judd, Grand Rapids, Mich., for plaintiff, Roger M. Clark, Grand Rapids, Mich., of counsel.

D. Patrick Mullarkey, Dept. of Justice, Washington, D. C., Harold D. Beaton, Grand Rapids, Mich., for defendant.

## OPINION

FOX, District Judge.

These actions are for recovery of Federal Estate Taxes alleged to have been erroneously, illegally, and improperly assessed and collected from the plaintiff. This court has jurisdiction under 28 U. S.C. § 1346(a) (1).

The parties have agreed to submit the cases for decision on the following stipulated facts.

Plaintiff is a banking corporation which is the duly appointed and acting Executor of the Estate of Frank T. Goodwin and the Estate of Mrs. Mildred S. Goodwin, his wife. Mr. Goodwin was born in 1909 and Mrs. Goodwin in 1912. The couple died together in a plane crash in Dade County, Florida, on February 12, 1963.

There was no evidence in fact as to which person died first, or that the Goodwins died other than simultaneously. They were residents of Grand Rapids, Michigan, at the time of the tragedy, and were survived by two children, Frank T. Goodwin II, an adult, and Sandra Lee Goodwin, born May 2, 1942.

Among the assets owned by Mrs. Goodwin at the time of her death was a life insurance policy on her husband's life in the face amount of $60,000, and with an interpolated terminal reserve at the date of death valued at $20,470.92. The beneficiary of the proceeds of this policy was "Mildred S. Goodwin, wife of the insured, if she survives the insured, otherwise to the children of the insured, who survive the insured, equally, or all to the survivor, or if none survives the insured to the executors or administrators of said wife." Since Mrs. Goodwin did not survive her husband, the proceeds of the policy were paid to the con-

tingent beneficiaries, the children of the insured.

In the estate tax return on Mrs. Goodwin's estate filed by plaintiff, the policy was included as a taxable asset and valued at $17,559.60. Plaintiff subsequently determined and now claims the replacement value to be the interpolated terminal reserve, $20,470.92.

The Internal Revenue Service determined the value of the policy to be the face amount, $60,000, and assessed a deficiency which plaintiff paid. Civil Action No. 5634 is plaintiff's suit to recover the taxes paid by Mrs. Goodwin's estate due to the overvaluation of the insurance policy.

Mrs. Goodwin's will placed the residue of her estate in trust for the benefit of Mr. Goodwin during his lifetime, and thereafter to their children. In filing an estate tax return, plaintiff claimed a tax credit for the taxes paid by Mrs. Goodwin's estate on the residue passed to Mr. Goodwin for life.

The Internal Revenue Service did not allow the credit, stating that the value of the residue to be attributed to Mr. Goodwin's life estate was zero, since he died at the same time as Mrs. Goodwin. Civil Action No. 5635 is plaintiff's suit to gain the tax credit denied by the Service.

Civil Action No. 5634 is discussed and decided in Part I, infra; Civil Action No. 5635 is discussed and decided in Part II.

### I.

The issue presented in No. 5634 is what value, for estate tax purposes on Mrs. Goodwin's estate, should be assigned to the life insurance policy on her husband owned by Mrs. Goodwin.

The government argues that since the deaths were simultaneous, and since the policy matured at the time of the insured's death, the proceeds of the policy, $60,000, should be included in the estate. The taxpayer answers that at no time was the policy worth $60,000 to the decedent, Mrs. Goodwin. Before her death (and Mr. Goodwin's), the value of the policy was the interpolated terminal reserve, pursuant to Internal Revenue Service Regulation 20.2031-8(a) (2). After her death, the value was zero, since contingent beneficiaries took under state law, and nothing of value was transferred to her estate.

■■ At the outset, the issue of the simultaneous death should be disposed of. Since plaintiff is unable to prove that the decedent and the insured did not die at the same instant, it must be assumed that they died simultaneously. In this case the $60,000 of insurance proceeds was immediately payable to the contingent beneficiaries because Michigan's simultaneous death act provides that when the insured and the primary beneficiary of a policy die simultaneously, the proceeds are payable as if the insured has survived. 20 M.S.A. Sec. 27.-3178(624), C.L.Mich.1948, § 720.104.

■ A life insurance contract, on the life of another, owned by a decedent is a taxable asset of his estate. Section 2031(a) of the Internal Revenue Code of 1954 provides in general that all assets must be included in a decedent's estate. Section 2033 limits this broad general rule by stating that the value of an asset is includable in a decedent's estate only to the extent of his interest in the asset. On inclusion of a life insurance contract, see Estate of E. M. Donaldson, 31 T.C. 729 (1959); Estate of DuPont v. Commissioner of Internal Revenue, 233 F.2d 210 (3rd Cir. 1956), cert. den. 352 U.S. 878, 77 S.Ct. 100, 1 L.Ed.2d 79.

Since decedent had 100% ownership of the policy, the only real question presented is the value of the policy at the time of decedent's death.

The time sequence is especially important in the circumstances surrounding this case. First, at the instant before Mrs. Goodwin's death, her husband was also alive. The policy thus had not matured, but was of some value to the decedent.

Internal Revenue Service Regulation 20.2031–8 refers specifically to this circumstance:

"(a) *Valuation of Certain Life Insurance and Annuity Contracts.* (1) The value of a contract for the payment of an annuity, or an insurance policy on the life of a person other than the decedent, issued by a company regularly engaged in the selling of contracts of that character is established through the sale by that company of comparable contracts. * * * (2) As valuation of an insurance policy through sale of comparable contracts is not readily ascertainable when, at the date of the decedent's death, the contract has been in force for some time and further premium payments are to be made, the value may be approximated by adding to the interpolated terminal reserve at the date of the decedent's death the proportionate part of the gross premium last paid before the date of the decedent's death which covers the period extending beyond that date. If, however, because of the unusual nature of the contract such an approximation is not reasonably close to the full value of the contract, this method may not be used."

Part (2) of this regulation quite clearly applies to the situation at the moment before the simultaneous death. Valuation is difficult, the contract has been in force for some time, and further premium payments are to be made.

The government disputes the application of this regulation to the instant case on two grounds. First, that since further premium payments would not be made because of the deaths, the regulation does not apply. To support this contention the government relies on Goodman v. Commissioner of Internal Revenue, 156 F.2d 218, 166 A.L.R. 444 (2nd Cir. 1946), where the insured's death was said to have a dual effect; instantaneously it terminated the taxpayer's power to revoke her trust, and therefore perfected the gift, and also matured the policies of insurance upon his life. Thus, the court found the same language as Regulation 20.2031–8 (a) (2) irrelevant, because no further premium payments were to be made (156 F.2d at 219).

Goodman differs from this case in several important respects. First, in Goodman it was the death of the insured which made the transfer complete, while in this case it is the decedent's death which effects the taxable transfer. Second, in Goodman there was but one death; in this case there are two, and tax is payable only on the transfer effected by one of them.

In fact, logic does not support the government's contention. At the instant before death, further premium payments were to be made. Also, the requirement of further premium payments is used in the regulation to describe the type of insurance contract that is difficult to value—one that is not fully paid up. The contract in this case is that type, and at the instant before death was difficult to value.

The government also argues that the regulation should not be applied because of the proviso: "If, however, because of the unusual nature of the contract such approximation is not reasonably close to the full value of the contract, this method may not be used." The argument proceeds that since the insured's death was imminent, the amount of the proceeds, $60,000, more nearly approximates the value of the policy. This argument might be valid, if the decedent's simultaneous death was not also imminent. Looking at the imminence of both deaths and the fact that the proceeds would not go to decedent's heirs, but to the contingent beneficiaries, the value of the policy would be closer to zero than to $60,000.

The fact that up to her death decedent had the power to change the contingent beneficiaries would increase the value of the policy above zero. See Commissioner of Internal Revenue v. Estate of Noel, 380 U.S. 678, 85 S.Ct. 1238, 14 L.Ed.2d 159 (1965). But that value would still

be very difficult to measure—another reason to apply the guide suggested by the Regulations.

A final difficulty in measurement occurs due to the inability at the moment of death to determine the survivorship issue: Will the deaths be treated as simultaneous? Will the decedent die first? Will the insured die first? The value of the policy depends on the answers to these questions—answers which can only be given after death, again making the value of the policy highly speculative. These difficulties in measurement make the application of Regulation 20.2031–8(a) (2) the fairest way to measure the value of the policy at the moment before death.

At the moment after Mrs. Goodwin's death, Mr. Goodwin was also dead. Under the terms of the policy, since there was no evidence the deaths were other than simultaneous, the proceeds went to the contingent beneficiaries. Mrs. Goodwin's estate took nothing. Once the policy had matured, the incidents of ownership were worth nothing.

Thus, the value of Mrs. Goodwin's estate at the instant after her simultaneous death with Mr. Goodwin is easy to compute: it is zero, since no one would pay anything for the value of the interest transferred from Mrs. Goodwin to her estate.

The value to be included is thus the interpolated terminal reserve, $20,470.-92, or nothing; in any event, it is not the $60,000 claimed by the government. For the government's position to be sustained, the court would be required to value Mrs. Goodwin's estate at the instant before her death, yet at the instant after her husband's. Since they died simultaneously, that valuation is improper.

The difficulty in deciding at which instant to value the asset stems from the difficulty in assigning a time to death. At one instant a person is alive; at the next instant he is dead. Which point in time should be used to measure the value of an insurance policy to the owner decedent?

The most well reasoned answer to this question was made by Circuit Judge Wisdom in United States v. Land, 303 F.2d 170 (5th Cir. 1962), cert. denied 371 U.S. 862, 83 S.Ct. 121, 9 L.Ed.2d 100:

> It is of course imperative that the tax be imposed on the *transfer* of the property in order to avoid the constitutional prohibition against unapportioned direct taxes. From this, it seems to us, it follows that the valuation of the estate should be made at the time of the transfer. The time of transfer is the time of death. Treas.Reg. 20.-2031–1(b). In Knowlton v. Moore, 1900, 178 U.S. 41, 56, 20 S.Ct. 747, 44 L.Ed. 969 the Supreme Court said, *"tax laws of this nature in all countries rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested."* See Shedd's Estate v. Commissioner of Internal Revenue, 9 Cir., 1956, 237 F.2d 345, 350, cert. denied, 352 U.S. 1024, 77 S.Ct. 590, 1 L.Ed.2d 596. 303 F.2d at 172. (Emphasis supplied.)

Thus, in this case the value of the interest that passes to the heirs of Mrs. Goodwin is the amount to be taxed.

> Brief as is the instant of death, the court must pinpoint its valuation at this instant—the moment of truth, when the ownership of the decedent ends and the ownership of the successors begins. It is a fallacy, therefore, to argue value before—or—after death on the notion that valuation must be determined by the value either of the interest that ceases or of the interest that begins. Instead, the valuation is determined by *the interest that passes,* and the value of the interest before or after death is pertinent

only as it serves to indicate the value *at* death. In the usual case death brings no change in the value of property. It is only in the few cases where death alters value, as well as ownership, that it is necessary to determine whether the value at the time of death reflects the change caused by death. * * *

An examination of several instances where the value of a decedent's property differs after death from its value during his life indicates that whether the subsequent value is increased or reduced, the valuation at death uniformly gives full effect to the change that accompanies the death.

[Citing Goodman v. Granger, 243 F. 2d 264 (3rd Cir. 1957), cert. denied 355 U.S. 835, 78 S.Ct. 57, 2 L.Ed.2d 47; May v. McGowan, 194 F.2d 396 (2nd Cir. 1952); Newell v. Commissioner of Internal Revenue, 66 F.2d 102 (7th Cir. 1933); Commissioner of Internal Revenue v. Chase Manhattan Bank, 259 F.2d 231 (5th Cir. 1958), cert. denied 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575]

* * * * * *

Underlying the determination in these instances that the valuation of property passing at death reflects the changes wrought by death is a basic economic fact: value looks ahead. To find the fair market value of a property interest at the decedent's death we put ourselves in the position of a potential purchaser of the interest at that time. Such a person would not be influenced in his calculations by past risks that had failed to materialize or by restrictions that had ended. Death tolls the bell for risks, contingencies, or restrictions which exist only during the life of the decedent. A potential buyer focuses on the value the property has in the present or will have in the future. He attributes full value to any right that vests or matures at death, and he reduces his valuation to account for any risk or deprivation that death brings into effect. 303 F.2d at 172–173.

Applying Wisdom's reasoning to this case, both the death of Mrs. Goodwin and the simultaneous death of her husband should be taken into account in valuing the interest that passed to Mrs. Goodwin's heirs at the moment of death.

Viewing value as of the instant of death, looking forward to the value which the heirs would take, and taking note of all the relevant circumstances at the moment of death, including the simultaneous death and the fact that the contingent beneficiaries would take the proceeds of the policy, the value of the rights transferred to Mrs. Goodwin's heirs was zero. At the moment of the simultaneous death, a potential buyer would have paid nothing for the interest transferred to the heirs.

█ For all these reasons, I find the value of the insurance policy to Mrs. Goodwin's estate for tax purposes to be zero.

## II.

Plaintiff is applying for a tax credit for Mr. Goodwin's estate under Section 2013 of the Internal Revenue Code of 1954:

"(a) *General Rule.*—The tax imposed by section 2001 shall be credited with all or a part of the amount of the Federal estate tax paid with respect to the transfer of property (including property passing as a result of the exercise or non-exercise of a power of appointment) to the decedent by or from a person (herein designated as a 'transferor') who died within 10 years before, or within 2 years after, the decedent's death."

The property transferred in this case is the life estate granted to Mr. Goodwin by the will of his wife. This property *is of a type included by Section 2013, as the Regulations, § 20.2013–5(a) define the term property as:*

" * * * any beneficial interest in property * * *. Examples of prop-

erty, as described in this paragraph, are annuities, life estates, estates for terms of years, vested or contingent remainders and other future interests."

These same Regulations define the term "transfer" as follows:

"The term 'transfer' of property by or from a transferor means any passing of property, or an interest in property, under circumstances which were such that the property or interest was included in the gross estate of the transferor."

This transfer is included under § 2013 and plaintiff is entitled to credit the estate tax by the percentage that the value of Mr. Goodwin's life estate is of the entire value of the trust.

The major questions thus become when and how Mr. Goodwin's life interest is valued.

There is no dispute on *when* the interest is to be valued. The death of a beneficiary should not prevent his estate from obtaining a credit for the estate taxes paid by the transferor's estate on account of the value, at the transferor's death, of the life interest transferred to the beneficiary. S.Rep. No. 1622, 83rd Cong., 2d Sess., p. 121 (3 U.S.C. Cong. & Adm.News (1954) 4621, 4755). Congress intended to value the transfer as of the date of the transferor's death rather than as of the date of the beneficiary's death. Thus, Revenue Ruling 59–9, 1959–1, Cum.Bull. 232, explains that the value of the life interest at the time of the transferor's death is used to compute the credit; even though, on account of his untimely death the total expected income could never reach the life tenant. The plaintiff's interest is measured at the time of Mrs. Goodwin's death.

What was the value at that time? Plaintiff claims it should have been computed by mortality tables, measuring the value by Mr. Goodwin's life expectancy. The government claims that at the time of his wife's death, Mr. Goodwin was also dead, or about to die. As such, the

value of the life estate would be zero, and plaintiff would get no tax credit.

Plaintiff places crucial emphasis on the provision in Mr. Goodwin's will which sets forth a presumption that he survived his wife. Even if he did survive his wife, it was only for an instant. It seems a fair assumption that at the time of his wife's death, plaintiff's death was apparent or inevitable.

The Sixth Circuit has held that where the condition of a person, whose life is to be used to measure the value of a life estate, is such as to make his life expectancy less than it would be if actuarially computed, the life expectancy must be determined on the basis of all the known facts. Hamilton National Bank of Chattanooga v. United States, 367 F.2d 554 (6th Cir.), affirming per curiam 236 F.Supp. 1005 (E.D.Tenn.1965). These facts are limited to data available at the moment of the wife's death. United States v. Provident Trust Co., 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793 (1934).

The facts to be used are not necessarily those that were actually known at the moment of death; they are rather those facts which existed and could have been discovered by a hypothetical buyer at the time of death. "The 'willing buyer and seller' are a hypothetical buyer and seller having a reasonable knowledge of relevant facts." United States v. Simmons, 346 F.2d 213, 217 (5th Cir. 1965). See also Bankers Trust Co. v. United States, 284 F.2d 537 (2nd Cir. 1960), cert. denied, 366 U.S. 903, 81 S.Ct. 1047, 6 L.Ed.2d 204; Schnorbach v. Kavanagh, 102 F.Supp. 828 (W.D. Mich.1951).

The relevant facts discoverable in this case include the plane crash and the probability of the simultaneous death situation. Given those facts, a hypothetical buyer would have paid nothing for the life interest of Mr. Goodwin, since his life would be immeasurably short, and nearly 100% of the residuary of Mrs. Goodwin's estate would go to the children.

Thus, valuing the life estate at the time of the wife's death, its value to the husband was zero, since his death was simultaneous. He should receive no tax credit for taxes paid by his wife on the amount given in trust to him for life.

The parties have stipulated that the exact refund due the plaintiff, if any, together with interest according to law, will be ascertained at the conclusion of this action on the basis of a recomputation by the Internal Revenue Service in accordance with the Court's decision. If the parties are unable to agree on this recommendation, they will submit their dispute to the court.

Judgment will be entered in accordance with the foregoing opinion.