UNITED STATES of America,
Appellant,

v.

Charles M. LAND, as Successor Executor
of the Last Will and Testament of John
Robert Land, Deceased, Appellee.

UNITED STATES of America,
Appellant,

v.

Charles M. LAND, Ernest H. Land and
Margaret L. Haney, as Executors of the
Last Will and Testament of Robert
Land, Deceased, Appellees.

Nos. 18958 and 18959.

United States Court of Appeals
Fifth Circuit.

May 16, 1962.

Ralph Kennamer, U. S. Atty., Mobile, Ala., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harvey G. Schneider, Attys., Dept. of Justice, Washington, D. C., Vernol R. Jansen, U. S. Atty., Mobile, Ala., Meyer Rothwacks, Atty., Dept. of Justice, Washington, D. C., Alfred P. Holmes, Jr., Asst. U. S. Atty., for appellant.

John E. Adams, Grove Hill, Ala., for appellee.

Adams, Gillmore & Adams, Grove Hill, Ala., of counsel.

Before RIVES and WISDOM, Circuit Judges, and CARSWELL, District Judge.

WISDOM, Circuit Judge.

■ These cases pose a problem in the valuation, for federal estate tax purposes, of a partnership interest subject to a restrictive agreement limiting the sales price of the interest to two-thirds of its value in the event of its sale during the partner's lifetime. The district court agreed with the taxpayers that the restriction limited the valuation to two-thirds of the property's calculated net value. We reverse. A restriction on the value of a partnership interest that expires at the decedent's death cannot affect the valuation of the interest for estate tax purposes.

The decedents, John Robert Land and his father, Robert Land, were members of a family partnership, Land Brothers & Company, formed in 1939 to engage in the general merchandise business in Melvin, Alabama. The partnership agreement provided that if any member wished to withdraw from the partnership during his lifetime the other partners would have the option of purchasing his interest at two-thirds its calculated value. At the death of a partner, the surviving partners became entitled to purchase his interest at its full value; if they did not do so, the partnership would be dissolved and its assets liquidated and distributed. John Robert Land died January 5, 1955. His father died a few months later. In reporting the value of each decedent's partnership interest the executors reduced the fair market value by one-third on the theory that value is determined before death and that the restriction controlled the valuation for federal estate taxes. There is no dispute as to the value of the interests apart from the controversy over the effect of the restriction in the partnership agreement.

The taxpayers rely primarily on the Supreme Court's pronouncement in Edwards v. Slocum, 1924, 264 U.S. 61, 44 S.Ct. 293, 68 L.Ed. 564, that the object of an estate tax is "not the interest to which some person succeeds on a death, but the interest which ceased by reason of the death". This reliance is misplaced. This is another instance of the truth of Justice Holmes's observation that there is "danger [in] reasoning from generalizations unless you have the particulars which they embrace in mind".[1] As other courts have pointed out in [2] referring to Edwards v. Slocum, the Supreme Court described the estate tax as one on "the interest which ceases by reason of the death" simply to distinguish it from a succession tax, which is calculated and graduated on the individual portion of the estate each heir or legatee receives rather than on the aggregate property passing from the decedent. Edwards v. Slocum did not involve the valuation of property for estate taxes.[3]

■ The statute applicable here is the general provision, Section 2033 of the Internal Revenue Code of 1954, 26 U.S. C.A. § 2033. This provides that "the gross estate shall include the value of all property * * * to the extent of the interest therein of the decedent at the time of his death." The Regulations

---

1. Holmes, "Law in Science and Science in Law," 12 Harv.L.Rev. 443, 461 (1899).

2. See Goodman v. Granger, 3 Cir., 1957, 243 F.2d 264, 268, cert. denied, 355 U.S. 835, 78 S.Ct. 57, 2 L.Ed.2d 47; Christiernin v. Manning, D.C.N.J., 1956, 138 F.Supp. 923, 926.

3. The question in Edwards v. Slocum was whether the estate could claim as a charitable deduction the full amount of the before-tax residue even though the res-

idue (and therefore the amount received by the charity devisees) would necessarily be reduced by the payment of the estate taxes. The Court allowed the full deduction, but was later overruled by legislation. See Section 807 of the Internal Revenue Act of 1932, 26 U.S.C.A. §§ 812, 861. This deduction is a matter of legislative grace which could be varied as Congress saw fit, and should not be expected to dovetail with tests for valuation of property in the estate.

reiterate the truism that the tax is "an excise tax on the transfer of property at death and is not a tax on the property transferred." Treas.Reg. 20.2033–1(a). It is of course imperative that the tax be imposed on the *transfer* of the property in order to avoid the constitutional prohibition against unapportioned direct taxes. From this, it seems to us, it follows that the valuation of the estate should be made at the time of the transfer. The time of transfer is the time of death. Treas.Reg. 20.2031–1(b). In Knowlton v. Moore, 1900, 178 U.S. 41, 56, 20 S.Ct. 747, 44 L.Ed. 969 the Supreme Court said, "tax laws of this nature in all countries rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested." See Shedd's Estate v. Commissioner, 9 Cir., 1956, 237 F.2d 345, 350, cert. denied, 352 U.S. 1024, 77 S.Ct. 590, 1 L.Ed.2d 596.

■ Brief as is the instant of death, the court must pinpoint its valuation at this instant—the moment of truth, when the ownership of the decedent ends and the ownership of the successors begins. It is a fallacy, therefore, to argue value before—or—after death on the notion that valuation must be determined by the value either of the interest that ceases or of the interest that begins. Instead, the valuation is determined by *the interest that passes,* and the value of the interest before or after death is pertinent only as it serves to indicate the value *at* death. In the usual case death brings no change in the value of property. It is only in the few cases where death alters value, as well as ownership, that it is necessary to determine whether the value at the time of death reflects the change caused by death, for example, loss of services of a valuable partner to a small business.

An examination of several instances where the value of a decedent's property differs after death from its value during his life indicates that whether the subsequent value is increased or reduced, the valuation at death uniformly gives full effect to the change that accompanies the death. In Goodman v. Granger, 3 Cir., 1957, 243 F.2d 264, cert. denied, 355 U.S. 835, 78 S.Ct. 57, 2 L.Ed.2d 47, the court was called on to evaluate three employment contracts carrying contingent benefits of $2000 annually for fifteen years after termination of the employee's employment, provided that the employee did not engage in any competing business for a certain period of time and provided that his post-employment earnings from other work did not exceed a specified amount. The trial court held that the value of the contracts must be limited to the interest of the decedent during his life and that his interest could not be valued because of the contingencies. On appeal the Third Circuit reversed. It ruled that since the possibility of forfeiture was extinguished by the decedent's death the contract rights should be given their full value for estate tax purposes. In May v. McGowan, 2 Cir., 1952, 194 F.2d 396 a father and son had organized a corporation which assumed a large debt owed by the father. Each agreed that he would not sell his stock without first offering it to the other at a specified price, and if the son should buy his father's stock the price was to be reduced by the amount of any portion of the debt still outstanding. At the death of either the other would become entitled as of right to purchase the stock at the same specified price. The father died while the debt still exceeded the price the son was to pay for his father's stock, and the question arose as to the valuation of the father's stock for estate taxes. Although the stock presumably must have had some value during the father's life, because of his right to hold it so long as he lived and to receive any dividends paid, the Court found that the stock was valueless for estate tax purposes since the son could acquire it under the agreement for nothing once his father died. Similarly, when the value of an interest in a corporation or partnership depends in part on the decedent's ability, activity, or goodwill,

the value for estate taxes will be reduced to reflect the loss of the decedent. Newell v. Commissioner, 7 Cir., 1933, 66 F. 2d 102; see Estate of Maddock, 1951, 16 T.C. 324. The same rule applies in the case of life insurance contracts. During the life of the insured the value of a policy is its cash surrender value. After death the beneficiary holds a ripened claim for the face value. See Commissioner v. Chase Manhattan Bank, 5 Cir., 1958, 259 F.2d 231, cert. denied, 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575. Section 2042 expressly provides that the latter valuation shall be used in determining estate taxes.[4]

Underlying the determination in these instances that the valuation of property passing at death reflects the changes wrought by death is a basic economic fact: value looks ahead. To find the fair market value of a property interest at the decedent's death we put ourselves in the position of a potential purchaser of the interest at that time. Such a person would not be influenced in his calculations by past risks that had failed to materialize or by restrictions that had ended. Death tolls the bell for risks, contingencies, or restrictions which exist only during the life of the decedent. A potential buyer focuses on the value the property has in the present or will have in the future. He attributes full value to any right that vests or matures at death, and he reduces his valuation to account for any risk or deprivation that death brings into effect, such as the effect of the death on the brains of a small, close corporation. These are factors that would affect his enjoyment of the property should he purchase it, and on which he bases his valuation. The sense of the situation suggests that we follow suit.

It might be argued that the Regulations abandon this approach and look to the past rather than the future in certain cases. Section 20.2031–2(h) provides that when stock is held subject to an option that is to take effect at death but leaves the decedent free to dispose of the property during his life, the option or contract price will not control the evaluation for estate tax purposes. See Estate of Giannini, 1943, 2 T.C. 1160, 1176–80, aff'd without discussion of this point, 9 Cir., 1945, 148 F.2d 285, cert. denied, 326 U.S. 730, 66 S.Ct. 38, 90 L. Ed. 434. This rule is based, however, on an entirely different foundation: when a decedent retains complete freedom to prevent the property being subjected to a restriction or contingency his inaction constitutes a passive transfer of an interest in the property to the person who stands to benefit by the limitation on the value of the property passing to the decedent's heir or legatee.[5] The rule applies the same principle that underlies Section 2038 and 2041, which include within a decedent's estate property over which he held a power of disposition or

---

4. The valuation of annuities further illustrates the practice of referring to its future value. In Mearkle's Estate v. Commissioner, 3 Cir., 1942, 129 F.2d 386 the decedent owned an annuity payable to himself during his life, then to his wife for her life. The court valued the contract at the purchase price of an equivalent annuity contract for the life of the wife based on her life expectancy at the decedent's death, without reference to his life expectancy or their joint life expectancy. See also Christiernin v. Manning, D.C.N.J., 1956, 138 F.Supp. 923.

5. In Goodman v. Granger, 3 Cir., 1957, 243 F.2d 264, 269, cert. denied, 355 U.S. 835, 78 S.Ct. 57, 2 L.Ed.2d 47, the Court stated: "True, the right to these payments was forfeitable upon the occurrence of any of the specified contingencies. However, forfeiture as a result of the contingencies never occurred during Blum's lifetime, and any possibility of their occurrence was extinguished by his death. Gimbels has been making and the estate has been collecting the payments provided by the contracts. Valuation of the right to these payments must be determined as of the time of Blum's death when the limiting factor of the contingencies would no longer be considered. Death ripened the interest in the deferred payments into an absolute one, and death permitted the imposition of the tax measured by the value of that absolute interest in property."

appointment.[6] Under this analysis such a case does not present a problem of changing value; the interest simply is split and passes to different persons, but its total value is unaltered, and that is the value included in the estate.

The cases relied on by the appellees are not in point. They involve restrictions which not only were in effect during the decedent's life but were effective and enforcible on his death; Wilson v. Bowers, 2 Cir., 1932, 57 F.2d 682; Lomb v. Sugden, 2 Cir., 1936, 82 F.2d 166. See Merthens' Law of Federal Gift and Estate Taxation § 9.08. Thus, in Wilson v. Bowers the Court emphasized the fact that there was a specifically enforcible contract giving the shareholders the right to purchase stock at a specified price upon the owner's intended disposal of the stock *or upon his death*. In Lomb v. Sugden the same court held a restriction conclusive of value where there was an enforcible agreement giving the decedent the power of disposal within a group. Other cases have distinguished between an enforcible option immediately exercisable at the will of the buyer, as in Wilson v. Bowers, and a mere right of first refusal. Worchester County Trust Co. v. Commissioner, 1 Cir., 1943, 134 F.2d 578; Michigan Trust Co. v. Commissioner, 27 B.T.A. 556 (1933). Both in Wilson v. Bowers and in Lomb v. Sugden it was decisive that the maximum price realizable by the estate was the option price, because the optionees having the right to buy could and probably would buy at the reduced value—before or after death of the decedent. Not so here. Here the option to sell at the reduced price had expired, and there is no reason to assume that the executors would sell below the fair market value.

■ Even if the partnership interest should, as the appellees contend, be valued at the moment before the dedecent's death, it would be improper to limit the valuation to two-thirds its value. Although the Supreme Court in Helvering v. Salvage, 1936, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511 declared that an option held by a stranger limits the value of the property to its owner to the option price, that decision should not be extended to cases where the restriction is only an obligation to offer the property to the third person at a pre-arranged price *if* the owner should decide to sell. The reasoning behind the decision in Helvering v. Salvage is that if the value of the property rises above the option price the optionee will certainly exercise his option. But in the instant case the decedents had no such fear that they would lose their partnership interest as soon as it reached a certain value; the agreement reserved to each partner the right to hold his interest indefinitely, and the restriction on its sale price would become effective only if the partner chose to sell during his lifetime. Although the restriction would reduce the value of the interest somewhat, immediate saleability is certainly not the only attribute of value. The decedent's right to hold the interest and receive income from it, with the assurance that eventually the inter-

6. In Chase National Bank of City of New York v. United States, 1929, 278 U.S. 327, 335, 49 S.Ct. 126, 129, 73 L.Ed. 405 the Supreme Court held the estate tax could properly be imposed on the transfer of the decedent's life insurance at his death, although the interest of the beneficiaries had vested before his death and the proceeds were paid to them by the insurance company rather than by the decedent. The Court stated: "A power in the decedent to surrender and cancel the policies, to pledge them as security for loans and the power to dispose of them and their proceeds for his own benefit during his life which subjects them to the control of a bankruptcy court for the benefit of his creditors * * * and which may, under local law applicable to the parties here, subject them in part to the payment of his debts * * * is by no means the least substantial of the legal incidents of ownership, and its termination at his death so as to free the beneficiaries of the policy from the possibility of its exercise would seem to be no less a transfer within the reach of the taxing power than a transfer effected in other ways through death." See also Saltonstall v. Saltonstall, 1929, 276 U.S. 260, 48 S.Ct. 225, 72 L.Ed. 565.

est would be redeemable at full value, would raise its current value well above the restricted price applicable during his life. While it would not be possible to determine the proper valuation exactly, an approximate estimate would be more acceptable than the arbitrary application of the two-thirds price.

When John Robert Land and his father died, the possibility that either would withdraw from the partnership and surrender his interest at the two-thirds valuation was foreclosed. There was then no contract or option outstanding except in the partners to purchase at full value. Death sealed the fact that their interests would be purchased or redeemed at full value. The fair market value, therefore, of the partnership interest at the time of the death of the partner was its full value. That valuation is controlling for estate tax purposes.

The judgment is

Reversed.