ESTATE OF DANIEL J. HARRISON, JR., DECEASED, DANIEL J. HARRISON, III AND BRUCE F. HARRISON, INDEPENDENT CO-EXECUTORS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Harrison v. Commissioner
Docket No. 19980-84.
United States Tax Court
T.C. Memo 1987-8; 1987 Tax Ct. Memo LEXIS 8; 52 T.C.M. (CCH) 1306; T.C.M. (RIA) 87008; January 6, 1987. J. Thomas Eubank,S. Stacy Eastland, and Charles A. Crocker, for the petitioner. David W. Johnson, for the respondent. SHIELDS
MEMORANDUM OPINION SHIELDS, Judge: Respondent determined a deficiency of $31,758,893.37 *10 in the estate tax due from the Estate of Daniel J. Harrison, Jr. After concessions, these issues remain for decision: (1) the value for estate tax purposes of a limited partnership interest owned by decedent; (2) whether the estate is entitled to a deduction under section 2053[1] for estimated interest on installment payments of the estate tax due respondent and the inheritance tax due the State of Texas; and (3) whether petitioner is entitled to a deduction under section 2053 for post-death interest paid by the estate on a debt incurred by decedent during his lifetime. The facts in this case were fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioner is the estate of Daniel J. Harrison, Jr. ("decedent") who died at the age of 60 on January 14, 1980, a resident of Houston, Texas. The independent co-executors of the estate are Daniel J. Harrison III ("Dan") and Bruce F. Harrison ("Bruce"), the sons of decedent. *11 They were also residents of Houston, Texas at the time the petition was filed. Limited Partnership Interest
On June 10, 1975, decedent, whose health was declining, executed a power of attorney generally authorizing Dan to manage his assets which included extensive ranching properties and other real estate as well as oil and gas interests in both developed and undeveloped properties. Decedent's health continued to decline and Dan continued to manage his father's properties under the power of attorney until August 1, 1979. On that date Bruce and Dan, acting individually and under the power of attorney for the decedent, organized Harrison Interests, Ltd., a Texas limited partnership, with the principal purpose of consolidating and preserving decedent's assets. On the same date, Dan, under the power of attorney for decedent, contributed assets of the decedent to the partnership in return for a 1 percent general partnership interest and a 77.8 percent limited partnership interest. [2] At the same time, Dan and Bruce also contributed assets to the partnership in return for separate 10.6 percent general partnership interests. The assets contributed by each of the partners consisted *12 primarily of real estate, oil and gas interests, and marketable securities that the decedent and his sons had accumulated. None of the properties contributed to the partnership by either Dan or Bruce had been given to them by decedent. The combined value of decedent's general partnership interest and his limited partnership interest at the time of the creation of the partnership was $59,476,523, which was the value of the properties contributed by decedent to the partnership. Dan's general partnership interest *13 and Bruce's general partnership interest each had a value at the creation of the partnership of $7,981,351, which was the value of the assets they each contributed to the partnership. Under the partnership agreement, the general partners had absolute control over the management of the partnership. Each general partner also had the right during life to dissolve the partnership, but neither a limited partner nor a successor to a general partner had such a right. The partnership agreement provided that the partnership was to be automatically dissolved upon the death of a general partner, or upon an election to dissolve by a living general partner, unless within 90 days of such death, or such election, all of the other general partners agreed to continue the partnership. In such case, the partnership was to continue, but the estate of the deceased general partner, or the living general partner electing to dissolve the partnership, was entitled to a payment equal to the amount he would have received had the partnership been dissolved. Under the partnership agreement, both general partners and limited partners had the right to sell or assign their partnership interests after first giving *14 the other general partners an option to buy such interests. Similarly, the agreement also provided that upon the death of a general partner, his legal representative was required to give the remaining general partners an option to buy the deceased partner's general partnership interest. On January 14, 1980, decedent died of another stroke. On February 4, 1980, Dan and Bruce exercised their option to purchase decedent's general partnership interest for $757,116. This sale was confirmed by a decree of a probate court for Harris County, Texas, on March 12, 1980. Pursuant to the partnership agreement, Dan and Bruce also agreed within ninety days after decedent's death to continue the partnership. In this case, respondent and petitioner agree that $757,116 is the value of decedent's general partnership interest. they disagree, however, as to the value of his limited partnership interest. Respondent claims that the value of the limited partnership interest is $59,555,020, which is the agreed value of the proportionate share of the partnership assets that decedent would have received for his limited partnership interest if the partnership had been dissolved or if decedent's limited *15 partnership interest had been terminated immediately before his death pursuant to the partnership agreement. Petitioner contends that the value of the limited partnership interest is $33,000,000, which we find from the stipulation of the parties was the value of the limited partnership interest the moment after it passed from the decedent to his estate. The difference between the two values is attributable entirely to the right which decedent had as a general partner up until his death to force a dissolution of the partnership. [3] The parties agree that under the partnership agreement and applicable Texas law this right did not pass to the estate. Respondent relies on sections 2033, 2035, 2036, 2037, 2038, and 2041 in support of his argument that the value of decedent's limited partnership interest for estate tax purposes is $59,555,020, the amount at which he could have forced its liquidation immediately before his death. Respondent's reliance upon section 2033 is inapposite, however, *16 as is well illustrated by the reasoning in United States v. Land,303 F.2d 170, 171-173 (5th Cir. 1962), cert. denied 371 U.S. 862 (1962), where it was stated: The statute applicable here is * * * Section 2033 of the Internal Revenue Code * * *. This provides that "the gross estate shall include the value of all property * * * to the extent of the interest therein of the decedent at the time of his death." The Regulations reiterate the truism that the tax is "an excise tax on the transfer of property at death and is not a tax on the property transferred." Treas.Reg 20.2033-1(a). It is of course imperative that the tax be imposed on the transfer of the property in order to avoid the constitutional prohibition against unapportioned direct taxes. From this * * * it follows that the valuation of the estate should be made at the time of the transfer. The time of transfer is the time of death. Treas.Reg. 20.2031-1(b). In Knowlton v. Moore, 1900, 178 U.S. 41, 56, 20 S.Ct. 747, 44 L.Ed. 969 *17 the Supreme Court said, "tax laws of this nature in all countries rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested." [Emphasis supplied; citations omitted.] Brief as is the instant of death, the court must pinpoint its valuation at this instant -- the moment of truth, when the ownership of the decedent ends and the ownership of the successor begins. It is a fallacy, therefore, to argue value before -- or -- after death on the notion that valuation must be determined by the value either of the interest that ceases or of the interest that begins. Instead, the valuation is determined by the interest that passes, and the value of the interest before or after death is pertinent only as it serves to indicate the value at death. In the usual case death brings no change in the value of property. It is only in the few cases where death alters value, as well as ownership, that it is necessary to determine whether the value at the time of death reflects the change caused *18 by death, for example, loss of services of a valuable partner to a small business. [Emphasis added.] * * * Underlying the determination in these instances that the valuation of property passing at death reflects the changes wrought by death is a basic economic fact: value looks ahead. To find the fair market value of a property interest at the decedent's death we put ourselves in the position of a potential purchaser of the interest at that time. Such a person would not be influenced in his calculations by past risks that had failed to materialize or by restrictions that had ended. Death tolls the bell for risks, contingencies, or restrictions which exist only during the life of the decedent. A potential buyer focuses on the value the property has in the present or will have in the future. He attributes full value to any right that vests or matures at death, and he reduces his valuation to account for any risk or deprivation that death brings into effect, such as the effect of the death on the brains of a small, close corporation. These are factors that would affect his enjoyment of the property should he purchase it, and on which he bases his valuation. The sense of *19 the situation suggests that we follow suit. [Emphasis added.] When the foregoing reasoning is applied to this case, it is apparent that the property transferred at the moment of decedent's death was the limited partnership interest that passed to decedent's estate, which did not include the right to dissolve the partnership. Nevertheless, respondent claims that when decedent's right to dissolve the partnership terminated at his death something of value passed to Dan and Bruce. However, we are unable to agree because this contention is contrary to respondent's stipulation that the value of the interests of Dan and Bruce were the same at the moment before decedent's death, at the moment of decedent's death, and at the moment after decedent's death. Respondent also contends that we should ignore the effect the partnership agreement has upon decedent's limited partnership interest because the partnership agreement was an attempt to artificially depress the value of decedent's property for estate tax purposes. Such an agreement will be ignored only if there is no business purpose for the *20 creation of the partnership or if the agreement is merely a substitute for testamentary disposition. See Estate of Bischoff v. Commissioner,69 T.C. 32, 39-41 (1977). With respect to business purpose, petitioner presented convincing proof that the partnership was created as a means of providing necessary and proper management of decedent's properties and that the partnership was advantageous to and in the best interests of decedent.Respondent presented no proof to rebut petitioner's showing. With respect to the issue of whether the agreement was a substitute for testamentary disposition, we find in petitioner's favor for three reasons. First, the agreement applied to all the partners, and no partner's assignee or estate could liquidate the partnership without the remaining partners' consent. See Estate of Bischoff,69 T.C. at 41; Estate of Littick v. Commissioner,31 T.C. 181, 186-188 (1958). Furthermore, decedent received adequate consideration for his transfer to the partnership. See Estate of Bischoff,69 T.C. at 41 n.9. Finally, although the creation of the partnership eventually resulted in a substantial *21 decrease in estate taxes, there is no proof in the record that the partnership was created other than for business purposes. Having determined that the property interest to be valued is that which passed to the decedent's estate, we must now decide how to value it. As stated in United States v. Land,supra, we must pinpoint our valuation at the instant of death, "the moment of truth, when the ownership of the decedent ends and the ownership of the successor begins." 303 F.2d at 172. The value thus pinpointed is to be determined by reference to the classical fair market value, the amount at which the limited partnership interest would have changed hands between a willing seller and a willing buyer with neither being under any compulsion and both having reasonable knowledge of the relevant circumstances. Section 2031; section 20.2031(b), Estate Tax Regs. As also noted in Land, a potential buyer of the partnership interest would focus on the value of such interest in the present or the future, not the past. Thus decedent's right during life to liquidate the partnership would no longer be available to enhance the value of the partnership interest *22 after his death. Put simply, the only purchase available to such a potential buyer in this case would be the limited partnership interest without any right to liquidate the partnership. As previously indicated, the parties have stipulated that the value of such interest is $33,000,000. Respondent next contends that under section 2035 the gross estate includes the right to liquidate the partnership as property transferred by the decedent without adequate and full consideration during the three-year period ending on his death. In this connection, respondent argues that when the decedent originally transferred his assets to the partnership he failed to retain for his estate the right to liquidate the partnership while the other partners retained such right for their estates. Thus, according to respondent, decedent transferred without adequate consideration and in contemplation of death something of value to the other partners when the partnership was created. We disagree because we find that Dan and Bruce did not retain a liquidation right for their estates since, in this respect, the partnership agreement treats all three partners equally. Furthermore, as stipulated to by respondent, *23 the decedent received partnership interests equal in value to the assets he contributed to the partnership; thus, there was adequate and full consideration for his transfer. Moreover, no transfer was made by decedent to Dan and Bruce since they received partnership interests having stipulated values equal to the assets they contributed to the partnership. Respondent also contends that under section 2036 the gross estate includes the right to liquidate the partnership as property transferred by the decedent without adequate consideration and over which he retained for his life the right to possession, enjoyment, or the income therefrom. As noted above, decedent's transfer to the partnership was for a full and adequate consideration. In addition, he retained no rights in the transferred property, but instead acquired partnership interests having equal value. We are also unable to agree with respondent's contention that the decedent's estate includes the right to liquidate the partnership under section 2037 as property transferred by the decedent without adequate consideration where he retained a reversionary interest in the property and the enjoyment of the property could be obtained *24 only by surviving the decedent. Here again, this section is not applicable because there was adequate and full consideration given for decedent's transfer. Furthermore, he did not retain a reversionary interest in the assets, and the enjoyment of the other partners of their interest in the assets contributed by him to the partnership was not postponed until the death of decedent. Section 2038 is equally inapplicable because there was no gratuitous transfer by the decedent and he retained no right to alter or terminate the transfer to the partnership. Section 2041 is inapplicable because decedent did not retain a general power of appointment over the property transferred to the partnership. In conclusion, given the facts stipulated to by respondent and the absence of any proof putting into question the purpose of the partnership, we hold that for estate tax purposes the value of the decedent's limited partnership interest was $33,000,000. Estimated Interest Expense on Estate and Inheritance Taxes
In the estate tax return, petitioner elected under section 6166 to pay the estate tax in ten equal annual installments. Respondent approved the election. Petitioner also *25 deferred payment of a portion of the inheritance tax due the State of Texas. At the date of trial, petitioner had paid interest of $4,782,324 to respondent on the estate tax. Petitioner also had paid interest on the inheritance tax in the amount of $624,137. Respondent agrees that these amounts plus any such interest which is paid by petitioner prior to the decision being entered in this case qualify for deduction from the gross estate under section 2053(a)(2). Respondent, however, does not agree that petitioner is entitled to deduct interest not paid as of the date of this decision but estimated to be paid by the date of the last installment of the estate and inheritance taxes. Petitioner has estimated, using a 12 percent interest rate, that interest yet to be paid on the estate tax is $5,244,715, and interest yet to be paid on the inheritance tax is $49,114. In Estate of Bailly v. Commissioner,81 T.C. 246, modified, 81 T.C. 949 (1983), we concluded that interest on state inheritance and Federal estate taxes are deductible under section 2053(a)(2) only *26 as they accrue and become certain because with fluctuating interest rates it is impossible to make a reasonable estimate of the amount of interest involved and prepayment of the taxes would eliminate the interest. 81 T.C. at 251. Petitioner concedes that Bailly is on point, but argues that the reasons we gave for not allowing the deduction could be overcome by requiring respondent to enter into either a closing agreement or a compromise agreement under which the estate would be allowed the deduction in return for agreeing to pay any increased estate tax resulting from failure to make the interest payments. However, this Court does not have authority to require respondent to enter into such a closing or compromise agreement. Post-Death Interest on Debt Incurred by Decedent
On December 19, 1979, the decedent, through a power of attorney, executed a promissory note payable on December 19, 1980 in the amount of $1.5 million dollars to Texas Commerce Bank. The estate paid the note at maturity, without renewing or extending it. The payment included interest in the amount of $118,134.67, which had accrued subsequent to the decedent's death. *27 Post-death interest paid on a debt incurred by a decedent during his life and not renewed by his estate is deductible under section 2053(a)(2) if the following conditions are met: (1) the interest expense is actually and necessarily incurred in the administration of the decedent's estate; and (2) the expense is allowable as an administration expense under local law. Estate of Wheless v. Commissioner,72 T.C. 470, 479-480 (1979); Estate of Webster v. Commissioner,65 T.C. 968, 981 (1976). With respect to the first condition, it is stipulated that the interest expense was actually incurred by petitioner, and under our reasoning in Estate of Webster, we find that the interest was necessarily incurred because the retirement of the $1.5 million debt prior to its maturity would have required the liquidation of estate assets under unfavorable conditions. We addressed the second condition in Estate of Wheless, where we noted that chapter 7, section 242 of the Texas Probate Code (Vernon 1956), provides that: *28 Personal representatives of estates shall also be entitled to all necessary and reasonable expenses incurred by them in the preservation, safe-keeping, and management of the estate, and in collecting or attempting to collect claims or debts, and in recovering or attempting to recover property to which the estate has a title or claim, and all reasonable attorney's fees, necessarily incurred in connection with the proceedings and management of such estate, on satisfactory proof to the court. * * * 72 T.C. at 480. Relying on this statute, as well as Estate of Todd v. Commissioner,57 T.C. 288 (1971) and King v. Battaglia,38 Tex. Civ. App. 28, 84 S.W. 839 (1905), we concluded that interest is allowable as an administration expense under Texas law. 72 T.C. at 480. We also found that such expense was "necessary and reasonably incurred by [the executors] in the preservation, safe-keeping, and management of the estate." 72 T.C. at 480. We believe that this conclusion is equally applicable to the present case. Consequently, we conclude that the interest expense is allowable as an administration expense under *29 Texas law and is deductible by the estate under section 2053(a)(2). Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.↩
2. Dan's acts with respect to the creation of the partnership and the contribution of decedent's assets thereto under the power of attorney were reviewed in detail and approved by the District Court of Fort Bend County, Texas in September 1979 in an adversarial proceeding brought by decedent's next friend who alleged, and the court found, that on August 12, 1979, decedent had suffered a stroke and had fallen and broken both shoulders. The Court further found that the partnership constituted "a means for the proper and necessary management of the properties of [decedent]" and that the partnership agreement was "advantageous to and in the best interests of [decedent]."↩
3. In other words, decedent's right, as a general partner, to dissolve and liquidate the partnership increased the value of the limited partnership interest by the difference of $26,555,020.↩