ESTATE OF DEAN A. CHENOWETH, DECEASED, JULIA JENILEE CHENOWETH, PERSONAL REPRESENTATIVE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1641-86.          Filed June 29, 1987.

*Joseph W. Jacobs*, for the petitioner.
*Jane T. Dickinson*, for the respondent.

OPINION

KÖRNER, *Judge*: Respondent determined a deficiency of Federal estate tax against petitioner in the amount of

$232,227.50. The sole issue between the parties is whether, in computing the marital deduction to which it is entitled under the provisions of section 2056,[1] petitioner may value certain stock passing to decedent's surviving spouse by taking into account an alleged additional element of value because of the control which such block of stock has over the company involved.

After the case was at issue, respondent filed a motion for summary judgment, which petitioner opposed, and, after arguments thereon, the Court took the case under advisement. The case is before us in this posture.

Rule 121 provides in pertinent part:

(a) General: Either party may move, with or without supporting affidavits, for a summary adjudication in his favor upon all or any part of the legal issues in controversy * * *

(b) Motion and Proceedings Thereon: The motion shall be filed and served in accordance with the requirements otherwise applicable * * * An opposing written response, with or without supporting affidavits, shall be filed within such time as the Court may direct. A decision shall thereafter be rendered if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law * * *

Respondent, as the party moving for summary judgment in this case, has the burden of demonstrating that no genuine issue as to any material fact exists, and that he is entitled to judgment as a matter of law. *Adickes v. Kress & Co.*, 398 U.S. 144, 157 (1970); *Gulfstream Land & Development v. Commissioner*, 71 T.C. 587, 596 (1979). The facts relied upon by respondent must be viewed in the light most favorable to petitioner so that any doubt as to the existence of a genuine issue of material fact will be resolved in favor of denying the motion. *Adickes v. Kress & Co.*, *supra*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975). Nevertheless, the motion must be granted if the Court is satisfied that no real fact or controversy is present so that the remedy can serve "its salutary purpose in avoiding a useless, expensive, and

---

[1]All statutory references are to the Internal Revenue Code of 1954 as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.

time-consuming trial where there is no genuine, material fact issue to be tried." *Lyons v. Board of Education of Charleston*, 523 F.2d 340, 347 (8th Cir. 1975).

Upon examination of the pleadings, respondent's motion for summary judgment, and attachments thereto, petitioner's response and the respective statements of the parties at the hearing herein, it appears that the following material facts are not in dispute:

Petitioner herein is the Estate of Dean A. Chenoweth (hereinafter decedent), acting by and through Julia Jenilee Chenoweth (hereinafter Jenny), the duly appointed personal representative of the estate. At the time of filing of the petition herein, petitioner's residence was in Tallahassee, Florida.

Decedent died on July 31, 1982. A timely Federal estate tax return was thereafter filed for his estate by the personal representative. The principal asset of decedent's gross estate was all of the outstanding common voting stock of Chenoweth Distributing Co., Inc. (hereinafter the company), which was owned by decedent at the date of his death and which was valued in the Federal estate tax return at $2,834,033. For purposes of arriving at the value of the gross estate under section 2031, respondent has accepted this valuation.

Under decedent's will, duly probated, decedent left 255 shares, or 51 percent, of the company's stock to his surviving wife, Jenny, and 245 shares, or 49 percent, of the company's stock to his daughter by a prior marriage, Kelli Chenoweth. So far as the bequest to Jenny is concerned, there is no dispute between the parties that the bequest was outright and qualifies for the marital deduction provided by section 2056. The parties are likewise in agreement that under Florida law, which governs here, the 51-percent stock interest passing to Jenny gives her complete control of the company.

As filed with respondent, decedent's estate tax return claimed a marital deduction with respect to the stock interest in the company passing to Jenny in the amount of $1,445,356, which was precisely 51 percent of the date of death value of $2,834,033 for all the stock. In the petition filed herein, however, petitioner now claims that the value

of the company's stock passing to Jenny for marital deduction purposes should be $1,996,038, arrived at by adding a "control premium" of 38.1 percent to the value of such stock as originally reported.

Respondent contests this claim, and, in his motion for summary judgment, takes the position that, as a matter of law, petitioner is not entitled to increase the value of the controlling interest in the company, and claimed as a marital deduction, above a strict 51-percent share of the value of all the stock of the company, as reported in the gross estate. Petitioner, opposing respondent's motion, contends that there is no such prohibition as a matter of law. The parties are in agreement that if respondent is correct as to his legal proposition, there are no remaining material facts in dispute, and that summary judgment may be granted in his favor. On the other hand, the parties agree that if petitioner is correct on the legal issue presented, then there is a remaining major material fact which is still in dispute, viz, the additional amount of value or control premium which is to be added to the majority block of shares passing to Jenny and for which marital deduction is claimed herein, so that respondent's motion for summary judgment should be denied.

The issue presented here is a novel one, and does not seem to have been directly addressed until now, at least by this Court. It requires us to consider the fundamental nature of the Federal estate tax, as a basis for how assets are to be valued for purposes of inclusion in the gross estate under section 2031. At the same time, we must also consider the nature of the marital deduction provided by section 2056, the valuation of assets qualifying for deduction under that section, and the moment in time when such assets are to be valued.

As particularly relevant herein, section 2001(a) provides:

SEC. 2001(a). IMPOSITION.—A tax is hereby imposed on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States.

We think it is now clear that this tax is an excise tax laid upon the right of the decedent to transmit his property at death and is measured by the value of that property which

is transmitted at death. *Edwards v. Slocum*, 264 U.S. 61 (1924); *New York Trust Co. v. Eisner*, 256 U.S. 345 (1921).

Section 2031(a) provides:

SEC. 2031(a). GENERAL.—The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.

Section 2033 in turn provides:

The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.

We may accept as a first step, then, that for purposes of inclusion in the decedent's gross estate under section 2031, his assets are to be valued at their worth at the moment of death. In this context, and for these purposes, respondent recognizes that a block of stock which represents the controlling interest in a company may be worth more than a block of stock in the same company which does not carry with it the control of the company. Thus, respondent's regulations provide, in part:

On the other hand, if the block of stock to be valued represents a controlling interest, either actual or effective, in a going business, the price at which other lots change hands may have little relation to its true value. [Sec. 20.2031-2(e), Estate Tax Regs.]

The same regulation goes on to provide:

(f) *Where selling prices or bid and asked prices are unavailable.* If * * * actual sale prices and bona fide bid and asked prices are lacking, then the fair market value is to be determined by taking the following factors into consideration:

(1) * * *
(2) In the case of shares of stock, the company's net worth, prospective earning power and dividend paying capacity, and other relevant factors.

Some of the "other relevant factors" * * * are: * * * the degree of control of the business represented by the block of stock to be valued; * * *
[Sec. 20.2031-2(f), Estate Tax Regs.]

The courts have likewise recognized that an additional element of value may be present in a block of shares representing a controlling interest, for valuation purposes under section 2031. *Estate of Oman v. Commissioner*, T.C. Memo. 1987-71; *Estate of Salsbury v. Commissioner*, T.C.

Memo. 1975-333; compare *Estate of O'Connell v. Commissioner*, 640 F.2d 249 (9th Cir. 1981), affg. on this issue T.C. Memo. 1978-191. By the same token, a block of shares in a closely held corporation which is a noncontrolling minority interest may call for a reduction of its fair market value. *Estate of Andrews v. Commissioner*, 79 T.C. 938 (1982); *Estate of Leyman v. Commissioner*, 40 T.C. 100 (1963), revd. on other issues 344 F.2d 763 (6th Cir. 1965), revd. 383 U.S. 832 (1966); *Bishop Trust Co. v. United States*, an unreported case (D. Hawaii 1950, 42 AFTR 1221, 50-1 USTC par. 10,764).

In the instant case, there is no dispute between the parties as to the value of all the stock of the company. It was all owned by decedent at the moment of his death, and the value of that 100-percent interest was included in decedent's gross estate at a value which respondent has accepted. Certainly ownership of 100 percent of the outstanding stock of the company constitutes control. Whether the value used in this case for purposes of section 2031 included an element of value because of the control factor is not clear from this record, but we assume that it did.

It has been generally held, and is now accepted, that the estate tax is laid only on that which passes at death, not what was owned before death or what the legatee receives after death (*Estate of Bright v. United States*, 658 F.2d 999 (5th Cir. 1981)); see and compare *Estate of Curry v. United States*, 706 F.2d 1424 (7th Cir. 1983). Since the tax is laid upon the decedent's estate as a whole, and not upon the property which is received by the various legatees, the valuation of decedent's assets, *at least for purposes of computing his gross taxable estate under section 2031*, can usually be made without reference to the destination of those assets.

Although this appears to be a sound statement of the law, it has been recognized that the rule should not be oversimplified, nor is it absolute in all cases. Thus, in *United States v. Land*, 303 F.2d 170, 172 (5th Cir. 1962), cert. denied 371 U.S. 862 (1962), the court, after reiterating the rule as we have enunciated it above, went on to say:

In the usual case, death brings no change in the value of property. It is only in the few cases where death alters value, as well as ownership, that

it is necessary to determine whether the value at the time of death reflects the change caused by death * * * [303 F.2d at 172.]

This brings us to a consideration of the marital deduction provisions of section 2056. As relevant herein, that section provides:

SEC. 2056(a). ALLOWANCE OF MARITAL DEDUCTION.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall * * * be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

Respondent's regulations, as pertinent to the present problem, provide in part:

In order to obtain the marital deduction with respect to any property interest, the executor must establish the following facts:
(1) * * *
(2) * * *
(3) That the property interest is a "deductible interest" * * * ;
(4) The value of the property interest * * *
[Sec. 20.2056(a)-1(b), Estate Tax Regs.]

As to whether a property interest is a "deductible interest," the regulations provide in part:

(b) An interest passing to a decedent's surviving spouse is a "deductible interest" if it does not fall within one of the following categories of "nondeductible interests":
(1) Any property interest which passed from the decedent to his surviving spouse is a "nondeductible interest" to the extent it is not included in the decedent's gross estate.
[Sec. 20.2056(a)-2(b), Estate Tax Regs.]

The regulations also provide:

The value, for the purpose of the marital deduction, of any deductible interest which passed from the decedent to his surviving spouse is to be determined as of the date of the decedent's death, * * * . The marital deduction may be taken only with respect to the net value of any deductible interest which passed from the decedent to his surviving spouse, * * * [Sec. 20.2056(b)-4(a), Estate Tax Regs.]

At this point, the focus of our inquiry has changed. For purposes of section 2031, we were concerned only with the value of the assets to be included in the decedent's gross

estate as a whole, and without reference to the destination of those assets under decedent's will or through the laws of descent and distribution. Under section 2056, however, a somewhat different question is presented: What is the asset that passes to the decedent's surviving spouse, and what is the value of it? Here, for the first time, we *are* concerned with the destination of the asset[2] and the nature and value of that interest which passes.

Under decedent's will, 255 shares of the company's stock, representing a controlling interest in the company, was broken off from the total stock ownership of decedent, as reflected for gross estate purposes under section 2031, and was bequeathed to his surviving spouse, Jenny. That 51-percent share of the stock of the company carried with it the element of control and the additional element of value which inheres in such a controlling interest. For the first time, then, we must consider the total stock interest of decedent as composed of two pieces: the 51-percent share passing to decedent's surviving spouse, including the control element, and the 49-percent interest representing a minority share of the company which passed to decedent's child, Kelli. As we have indicated above herein, it is clear to us that these two blocks of stock have different values. As we said in *Estate of Salsbury v. Commissioner, supra*:

> The payment of a premium for control is based on the principle that the per share value of minority interests is less than the per share value of a controlling interest. * * * A premium for control is generally expressed as the percentage by which the amount paid for a controlling block of shares exceeds the amount which would have otherwise been paid for the shares if sold as minority interests and is not based on a percentage of the value of the stock held by all or a particular class of minority shareholders. * * *

This leads us to the consideration of two cases which appear to bear most closely on the present problem.

In *Provident National Bank v. United States*, 581 F.2d 1081 (3d Cir. 1978), decedent owned a majority of both the common stock and the class A stock of a closely held family corporation. Under his will, a portion of the class A stock was bequeathed to a marital trust for decedent's surviving spouse, with instructions to exchange such stock for new

---

[2]There is no dispute in this case that the taker here is decedent's surviving spouse.

preferred stock of the company under a plan of recapitalization provided in decedent's will. All remaining stock of the company which decedent owned or controlled, of both classes, was bequeathed to a nonmarital trust for the benefit of decedent's children, and such stock was not subject to the mandated recapitalization exchange. As the result of the recapitalization provided in decedent's will, the class A stock bequeathed to the marital trust would be transmuted into stock which would arguably be more valuable than such class A stock prior to the exchange.

Upon audit of decedent's Federal estate tax return, the Commissioner determined that decedent's holdings of both classes of stock were includable in his gross estate at a uniform value of $157 per share. He further allowed a marital deduction for the class A stock bequeathed to the marital trust at the same rate of $157 per share. Deficiencies of Federal estate tax resulting from this determination were paid.

Decedent's executor, while not contesting respondent's determination of the value of both classes of stock for purposes of sections 2031 and 2056(c) (the gross estate and the adjusted gross estate), claimed that the class A stock passing to the marital trust, as the result of the prospective recapitalization exchange, was worth more than it was prior to decedent's death, and accordingly brought a refund suit based upon an increased marital deduction with respect to such stock.

Upon cross-motions for summary judgment, the District Court (436 F. Supp. 587 (E.D. Pa. 1977)), granted the Government's motion and dismissed the case, holding, inter alia, (a) that the class A stock passing to the marital trust was to be valued without consideration of the will-mandated recapitalization exchange; and (b) that the value of the stock passing to the marital trust must be valued at the same figure for purposes of both sections 2031 and 2056.

On appeal, the Third Circuit reversed. As relevant to the instant case, the court held that:

(1) The interest which decedent bequeathed to the marital trust was an interest passing from decedent to the trust within the meaning of section 2056(a), and included the new stock to be exchanged for the old stock, with all its

characteristics, including the possibility of increased value in such interest, and the corresponding possibility of lesser value in decedent's other shares which were not bequeathed to the marital trust and were not subject to the recapitalization exchange. Material issues of fact were thus presented involving valuation and required a trial on the merits.

(2) The values of decedent's assets must be computed in the same manner and at the same values both for purposes of section 2031 and section 2056. Thus, decedent's entire equity interest in the stock must be revalued, to give effect to the increased value which might pertain to the stock passing to the marital trust, as well as the lower value which might be found for the remaining "nonmarital" stock. The increase in the value of the marital stock would not necessarily decrease the value of the nonmarital stock by the same amount.[3]

The second case which interests us here is *Ahmanson Foundation v. United States*, 674 F.2d 761 (9th Cir. 1981). In that case, at the time of decedent's death, he owned a controlling interest in the stock of HFA CO., as well as 99 nonvoting shares and 1 voting share (being all the outstanding stock) of another company, Ahmanco, both through a revocable trust. Under his will, Ahmanco received the controlling stock interest in HFA, but at the same time, the 99 shares of Ahmanco passed to a charitable foundation. The sole voting share of Ahmanco remained in the trust, with the right to vote it vested in decedent's son. The issues presented, inter alia, involved the correct valuation of the HFA and Ahmanco stock for purposes of section 2031, and the valuation of the 99 shares of Ahmanco for purposes of the charitable deduction under section 2055.[4]

The Ninth Circuit first held that:

(1) The value of assets is to be determined at the moment of death, but in doing so, valuation must take into account any changes in values brought about by the testator's distribution plan which will take effect prior to distribution.

---

[3]On remand, the District Court held that decedent's estate, after trial, had failed to provide that the stock bequeathed to the marital trust had a value greater than that assigned to it by the Commissioner. *Provident National Bank v. United States*, 502 F. Supp. 908 (E.D. Pa. 1980).

[4]There were also issues regarding the effect of State community property law upon a claimed marital deduction, which do not concern us here.

Thus, the value of the Ahmanco stock should be established so as to include the value of the controlling interest in HFA which Ahmanco acquired at the moment of death.

(2) The court went on to say and hold:

We must distinguish, however, the effect of "predistribution" transformations and changes in value brought about by the testator's death, from changes in value resulting from the fact that under the decedent's estate plan the assets in the gross estate ultimately come to rest in the hands of different beneficiaries. The estate tax is a tax upon a transfer as the Foundation contends. However it is a tax on the privilege of passing on property, not a tax on the privilege of receiving property. "The tax is on the act of the testator not on the receipt of the property by the legatees." * * * There is nothing in the statutes or in the case law that suggests that valuation of the *gross estate* should take into account that the assets would come to rest in several hands rather than one.

\* \* \* \* \* \* \*

We therefore conclude that *for purposes of valuing the gross estate* of decedent, the 100 shares of Ahmanco stock (representing the value of the 600 HFA shares that constitute the sole asset of Ahmanco) should not be viewed for valuation purposes as two separate marketable assets as they would be viewed in the hands of their respective recipients under the terms of the will. Rather, the 100 shares of Ahmanco stock should be viewed in the hands of the testator and thus given a value equal to the price which the 600 shares of HFA stock would have in an exchange between a willing buyer and seller.

[674 F.2d at 768-769. Emphasis added.]

(3) Finally, the court held that in valuing the 99 nonvoting shares of stock passing to the charity for the charitable deduction purposes of section 2055, however, different considerations control. Such value may be different from the value of the shares considered as part of the larger block for gross estate tax purposes under section 2031. The court said:

The Foundation argues that inconsistent valuations, for these two purposes, would be incompatible with the orderly administration and application of the estate tax law. There is, certainly, an initial plausibility to the suggestion that fairness dictates that the same method of valuation be used in computing the gross estate and the charitable deduction. This initial plausibility, however, does not survive a close second look.

The statute does not ordain equal valuation as between an item in the gross estate and the same item under the charitable deduction. Instead, it states that the value of the charitable deduction "shall not exceed the

value of the transferred property required to be included in the gross estate." * * *

* * * * * * *

Thus there are compelling considerations in conflict with the initially plausible suggestion that valuation for purposes of the gross estate must always be the same as valuation for purposes of the charitable deduction. When the valuation would be different depending on whether an asset is held in conjunction with other assets, the gross estate must be computed considering the assets in the estate as a block. * * * The valuation of these same sorts of assets for the purpose of the charitable deduction, however, is subject to the principle that the testator may only be allowed a deduction for estate tax purposes for what is actually received by the charity—a principle required by the purpose of the charitable deduction.
  [674 F.2d at 772.]

Thus, since the nonvoting shares which the charity received were separated from the voting power, the court held that a lower valuation of such shares for purposes of the charitable deduction was proper.

In the context of the problem presented in the instant case, both *Provident* and *Ahmanson* deserve our close consideration. As relevant here, both cases considered two closely interrelated matters:

A. Both cases agree on the proposition that changes can be wrought in the nature and value of an asset in a decedent's gross estate by the provisions of decedent's will, which may change the nature of that asset by changing some of its characteristics, and hence its value, by splitting it off from other similar assets and sending it to a different destination. Thus, in the *Provident* case, the value of the stock which decedent bequeathed to the marital trust had engrafted upon it the new stock into which it was to be converted pursuant to decedent's will, and thus arguably acquired a new and greater value. In *Ahmanson*, taking away from the stock passing to the charity the voting power, and lodging that in a different person, arguably changed the quality and value of the stock passing to the charity, and therefore had a depressing effect on its value for purposes of the charitable deduction. The parallel to the instant case is clear: that decedent, in breaking his 100-percent ownership of the company into 2 unequal shares, and in giving the majority interest to his surviving spouse, created a new and different asset, which carried with it the

control premium for valuation purposes, and (probably) reduced the value of the minority block of stock remaining in the gross estate by some amount also, although not necessarily by the same amount. See *Estate of Salsbury v. Commissioner, supra.*

B. As to the second closely interrelated point, the two cases diverge. In *Provident*, the court held that the values of decedent's assets must be computed in the same manner and at the same values both for purposes of section 2031 and section 2056. In *Ahmanson*, on the contrary, the Court held that perfect symmetry was not required.

We are in agreement with both *Provident* and *Ahmanson* with regard to A above. In the instant case, it is clear to us that the block of the company's stock passing under decedent's will to his surviving widow was the controlling interest in the company, and was entitled to be valued for purposes of section 2056 so as to include an additional element of value because of that control. Thus, simply valuing the 51-percent share of the company's stock qualifying for the marital deduction at a mechanical 51 percent of the total value ascribed to the stock for purposes of inclusion in the gross estate would not give effect to the additional element of value for control which inheres in that block of stock. The amount of such control premium presents a material issue of fact which is not resolved in the present record and therefore requires that respondent's motion for summary judgment be denied.

As to point B above, we think the reasoning of the *Ahmanson* court is more persuasive. While we would tend to agree that the sum of the parts cannot equal more than the whole—that is, that the majority block together with the control premium, when added to the minority block of the company's stock with an appropriate discount for minority interest, should not equal more than the total 100-percent interest of the decedent, as reported for purposes of section 2031—it might well turn out that the sum of the parts can equal less than the whole—that is, that the control premium which is added to the majority block passing to decedent's surviving spouse might be less than

the proper minority discount to be attributed to the shares passing to decedent's daughter, Kelli.[5]

In any event, this question is not before us at this time. We are not required to determine at this point whether the minority block of shares passing to Kelli requires that a discount be assigned to it, nor the amount of such discount, nor that such discount must precisely equal the amount of control premium which is properly assignable to the majority block of shares qualifying for marital deduction under section 2056. All we decide here is that such majority block may be entitled to an extra element of value because of the control over the company which such block possesses; that such additional element of value can properly be considered in computing the amount of the marital deduction; and that this presents a material question of fact which has not been resolved between the parties and as to which petitioner must have an opportunity to present its proof.

For these reasons, we conclude that respondent's motion for summary judgment must be denied.

*An appropriate order will be entered.*

---

[5]Sec. 2056(a), which we have quoted above herein, requires only that the interest qualifying for the marital deduction must have been included in the gross estate. It does not require that it be included at the same value.

Compare the corresponding provision of sec. 2055(d), which concerned the court in *Ahmanson Foundation v. United States*, 674 F.2d 761 (9th Cir. 1981), which provides that "the amount of the deduction under this section for any transfer shall not exceed the value of the transferred property required to be included in the gross estate."